No. 13-35038

# United States Court of Appeals
# for the Ninth Circuit

———————

GORDON B. MORGAN and JEREMY DE LA GARZA,

*Objectors – Appellants*,

————————————

ANGELO DENNINGS, *et al.*, on behalf of himself and
all others similarly situated;

*Plaintiffs – Appellees*,

— v. —

CLEARWIRE CORPORATION,

*Defendant – Appellee*.

————————————

Appeal from United States District Court for the
Western District of Washington, Case No. C10-1859 JLR
The Honorable James L. Robart

## PLAINTIFFS-APPELLEES' MOTION FOR SUMMARY AFFIRMANCE

<table>
<tr>
<td>

Clifford A. Cantor
LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
(425) 868-7813
</td>
<td>

Jonathan K. Tycko
TYCKO & ZAVAREEI LLP
2000 L St., N.W. Ste. 808
Washington, D.C. 20036
(202) 973-0900
</td>
</tr>
</table>

among Class Counsel and counsel for Plaintiffs – Appellees
(other Class Counsel listed on signature page)

## **Table of Contents**

NATURE OF MOTION .................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..............................................2

LEGAL ANALYSIS ....................................................................8

    I.    Summary Affirmance Is Appropriate in this Context ...........................9

    II.    Appellants' Objections Lack Merit ......................................11

        A.    The Settlement Does Not Include a "Quick Pay" Provision ....11

        B.    Class Counsel's Fee Request Is Reasonable...........................12

        C.    Paying Fees with One Check Is Not "Illegal" ........................15

        D.    Multipliers Are Permissible .......................................17

        E.    Appellants' Motives Are Suspect ...............................18

CONCLUSION .......................................................................20

# **Index of Exhibits**

1. Settlement Order and Final Judgment (December 20, 2012), Dkt. No. 99 [1]

2. Settlement Agreement and Release of Claims (August 6, 2012), Dkt. No. 61-1

3. Waiver of Certain Revisionary Rights Under Settlement Agreement and Release of Claims (November 8, 2012), Dkt. No. 68

4. Declaration of Jennifer M. Keough of Garden City Group, Inc. Regarding Notice Dissemination and Settlement Administration (November 8, 2012), Dkt. No. 70

5. Supplemental Declaration of Jennifer M. Keough of Garden City Group, Inc. Regarding Settlement Administration (December 12, 2012), Dkt. No. 85

6. Cantor Declaration re Objections (December 12, 2012), Dkt. No. 83

7. Cantor Supplemental Declaration in Support of Motions for Final Approval of Settlement and for Fees, Expenses, and Service Awards (December 12, 2012), Dkt. No. 86

8. Objection to Proposed Class Settlement and Award of Attorneys' Fees and Expenses (November 30, 2012), Dkt. No. 76

9. Order (December 11, 2012), Dkt. No. 82

10. Appellee-Plaintiff's Motion to Dismiss, For Summary Affirmance and for Sanctions, or, Alternatively, for Continuance to Allow Supplementation of Record in *In re: Wal-Mart Wage and Hour Employment Practices Litigation*, Case Nos. 09-17648, 09-17682, 09-17683 (9th Cir. May 10, 2010)

---

[1] All docket references are to ECF docket entries in *Dennings v. Clearwire Corp.*, No. C10-1859 JLR (W.D. Wash.).

11. Order in *In re: Wal-Mart Wage and Hour Employment Practices Litigation,* Case Nos. 09-17648, 09-17682, 09-17683 (9th Cir. August 10, 2010)

12. Oral Deposition of Gordon Morgan (taken on December 17, 2012, filed on December 18, 2012), Dkt. No. 97-2

13. Oral Deposition of Jeremy De La Garza (taken on December 17, 2012, filed on December 18, 2012), Dkt. No. 97-3

14. Plaintiffs' Motion for Appeal Bond and Declaration of Cliff Cantor in Support of Plaintiffs' Motion for Appeal Bond (February 20, 2013), Dkt. Nos. 107, 108

15. Declaration of Cliff Cantor and Jonathan Tycko in Support of Plaintiffs' (i) Motion for Final Approval of Settlement, and (ii) Motion for Attorneys' Fees and Expenses and Service Awards for Representative Plaintiffs (November 8, 2012), Dkt. No. 73

16. Compendium of Counsel's Declarations in Support of Motion for Attorneys' Fees and Expenses (November 8, 2012), Dkt. No. 74

17. Appendix to Plaintiffs' Combined Reply in Support of Motions for Final Approval of Settlement and for Fees, Expenses, and Service Awards and Excerpts from Compendium of Court Filings (December 12, 2012), Dkt. Nos. 84, 87

## **Table of Authorities**

### **Cases**

*Arthur v. Sallie Mae, Inc.*,
    No. 10-198, 2012 WL 4076119 (W.D. Wash. Sep. 17, 2012 ......................17

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011)....................................................................................3

*Bonilla v. Holder*,
    317 Fed. Appx. 710 (9th Cir. 2009) ...............................................................9

*Chavez v. Blue Sky Natural Beverage Co.*,
    No. 12-16520, slip op. (9th Cir. Dec. 11, 2012)...........................................19

*Clausen v. Icicle Seafoods, Inc.*,
    272 P.3d 827 (Wash. 2012) ..........................................................................17

*Dennings v. Clearwire Corp.*,
    No. 10-1859 (W.D. Wash.)..............................................................................1

*Devlin v. Scardelletti*,
    536 U.S. 1 (2002)............................................................................................9

*Embry v. ACER America Corp.*,
    No. 09-1808, 2012 WL 3777163 (N.D. Cal. Aug. 29, 2012).......................19

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011),
    *aff'd in part*, 473 Fed. Appx. 716 (9th Cir. 2012)........................................17

*Horn v. Carter*,
    209 Fed. Appx. 672 (9th Cir. 2006) .............................................................10

*In re Bank of Amer. Credit Protection Marketing & Sales Practices Litig.*,
No. 11-2269, 2013 WL 174056 (N.D. Cal. Jan. 16, 2013) ...........................16

*In re Bluetooth Headset Prod's Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........................................................................15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
281 F.R.D. 531 (N.D. Cal. 2012) ...........................................................1, 2, 4

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...........................................................8

*In re Chocolate Confectionary Antitrust Litig.*,
470 Fed. Appx. 67 (3d Cir. 2012) ................................................................10

*In re High Sulfur Content Gasoline Prod's Liab. Litig.*,
517 F.3d 220 (5th Cir. 2008) ........................................................................16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 07-1827, 2013 WL 149692 (N.D. Calo. Jan. 14, 2013) ........................16

*In re Wal-Mart Wage & Hour Employment Practices Litig.*,
No. 06-225, 2010 WL 786513 (D. Nev. Mar. 8, 2010)................................19

*In re Wal-Mart Wage & Hour Employment Practices Litig.*,
No. 09-17648 *et al.*, slip op. (9th Cir. Aug. 10, 2010) ...............................2, 6

*In re: LivingSocial Mktg. & Sales Practice Litig.*,
No. 11-472, objection (D.D.C. Feb. 8, 2013)................................................7

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ........................................................................10

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234 (9th Cir. 1998) ......................................................................10

*Minnick v. Clearwire U.S. LLC*,
    275 P.3d 1127 (Wash. 2012) ...........................................................................3

*Minnick v. Clearwire U.S. LLC*,
    No. 09-912 (W.D. Wash.).................................................................................1

*Mussmann v. Wal-Mart Stores, Inc.*,
    No. LACV-27486 (Dist. Ct., Clinton Cty., Iowa Oct. 13, 2009) ..................20

*Newton v. Clearwire Corp.*,
    No. 11-783 (E.D. Cal.) ....................................................................................1

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................13

*United States v. Hooton*,
    693 F.2d 857 (9th Cir. 1982) ...........................................................................9

*Williams v. MGM-Pathe Communications Co.*,
    129 F.3d 1026 (9th Cir. 1997) ......................................................................14

## Rules

Ninth Circuit Rule 3-6 ..........................................................................................1, 9

## Other Authorities

Barbara J. Rothstein & Thomas E. Willging,
    *Managing Class Action Litigation: A Pocket Guide for Judges*
    (Fed. Jud. Ctr. 3rd ed. 2010).........................................................................18

Brian T. Fitzpatrick,
    *The End of Objector Blackmail?*,
    62 VAND. L. REV. 1623 (2009) .......................................................................1

## NATURE OF MOTION

Pursuant to Ninth Circuit Rule 3-6, Plaintiffs-Appellees respectfully move for summary affirmance of the district court's Settlement Order and Final Judgment approving a class action settlement ("Settlement") in *Dennings v. Clearwire Corp.*, No. C10-1859 JLR (W.D. Wash.). The Settlement also resolves two other cases: *Minnick v. Clearwire US, LLC*, No. C09-912 MJP (W.D. Wash.) and *Newton v. Clearwire Corp.*, No. 2:11-cv-783-WBS-DAD (E.D. Cal.) (collectively, the "Actions"). *See* Ex. 1 (Order).

Appellants filed a meritless objection to the Settlement. The district court denied their objection. Appellants now appeal that denial.

Appellants are engaged in what courts and commentators have characterized as "objector blackmail." Fitzpatrick, Brian T., *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623, 1624-25, 1633-41 (2009). Appellants' counsel,

> attorney Christopher Bandas, [is] a "professional" or "serial" objector … Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct.

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (footnote omitted). As he has done in numerous cases,

> Bandas is … improperly attempting to "hijack" the settlement of the Actions from deserving class members and dedicated, hard working

- 1 -

> counsel, solely to coerce ill-gotten, inappropriate, and unspecified
> "legal fees."

*Id.* at n.4 (citation omitted).  The non-constructive conduct of "professional

objectors" such as Bandas and his clients has been summarized as follows:

> [P]rofessional objectors can levy what is effectively a tax on class
> action settlements, a tax that has no benefit to anyone other than to the
> objectors.  Literally nothing is gained from the cost:  Settlements are
> not restructured and the class, on whose benefit the appeal is
> purportedly raised, gains nothing.

*Id.* at n.3 (citation omitted).

Thus, in 2010, in an appeal similar to this one brought by settlement

objectors—including objectors represented by the same Bandas—this Court

granted summary affirmance of the district court's final-approval order.  Ex. 11 (*In

re Wal-Mart Wage & Hour Employment Practices Litig.*, Nos. 09-17648 *et al.*,

slip op. (9th Cir. Aug. 10, 2010)); *see also* Ex. 10 (motion).

This Court should cut short Appellants' manipulation of our legal system by

summarily affirming the district court's order approving the Settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

The Settlement resolved three cases filed as class actions, all of which

alleged that defendants, Clearwire Corporation or Clearwire US, LLC (jointly,

"Clearwire"), misrepresented their Internet service speed, intentionally slowed

customers' speeds, and/or provided poor Internet and phone service.  Certain of the

- 2 -

Actions also alleged that Clearwire's early termination fees ("ETFs") were wrongful. Ex. 15 at ¶ 16.

The parties finalized the Settlement on August 6, 2012, with an amendment on November 6, 2012. *See* Exs. 2-3. The Settlement was the product of months of arm's-length negotiations under the supervision of mediator Edward A. Infante, former Chief Magistrate Judge of the Northern District of California. Ex. 15 at ¶¶ 30-33.

In the face of steep legal hurdles that could have barred any recovery whatsoever,[2] Plaintiffs used their collective bargaining power to negotiate a settlement that provides both significant monetary relief and important non-monetary prospective relief. *Id*. at ¶¶ 8, 9, 29, 34.

No arbitrary cap was placed on Clearwire's exposure. Ex. 2 at ¶ 1.03. Plaintiffs successfully negotiated a streamlined online claims process that likely increased the number of claims submitted. *See* Ex. 4 at 7:19-21. The Settlement also provides for enhanced disclosures about Clearwire's network management policies and requires changes to Clearwire's ETF practices. Ex. 2 at ¶¶ 5.01-03.

---

[2]     The Supreme Court decided *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) while motions to compel arbitration were pending or would have been filed in *Dennings* and *Newton*. And, shortly before the settlement was finalized (but after the parties had entered into a Memorandum of Understanding), the Supreme Court of Washington issued a ruling on a question certified by the Ninth Circuit that would have supported affirming the district court's dismissal of *Minnick* on appeal, which was pending at the time. *See Minnick v. Clearwire U.S. LLC*, 275 P.3d 1127 (Wash. 2012).

Among other things, for at least two years following February 27, 2012, the Settlement requires Clearwire to waive ETFs for subscribers with fixed-term contracts who cancel due to quality or speed of service. *Id*. at ¶ 5.03.

Out of approximately 2.7 million class members, only 409 requested exclusion (representing less than 0.00015 of the class) and only eight filed objections (representing less than 0.000003 of the class). Ex. 5 at ¶ 20; Ex. 6 at ¶ 4; Ex. 7 at ¶¶ 3-4.

One of those objections was filed on behalf of Appellants Gordon B. Morgan and Jeremy De La Garza, by their counsel Christopher Bandas. Ex. 8. Bandas is widely recognized as a "serial" objector with suspect motives. *See CRT Antitrust Litig.*, 281 F.R.D. at 533 & nn. 3-4 (quoted *supra* at 1-2).

In the objection Bandas filed on behalf of Morgan and De La Garza, he contended that (1) "quick pay" provisions are improper—even though this settlement did not have a "quick pay" provision; (2) attorneys' fee "multipliers" are not allowed, citing law pertaining to federal fee-shifting statutes even though the Actions did not involve any federal fee-shifting statute; (3) the attorneys' fee request was too high; and (4) it is "illegal" for all fees to be paid by a single check to one law firm. *See* Ex. 8.

Recognizing that Plaintiffs had "demonstrated legitimate concerns regarding whether the objection made by Mr. Morgan and Mr. De La Garza was serious and

whether their attorney is a so-called 'professional objector,'" the district court ordered that Plaintiffs may depose Appellants. Ex. 9 (order).

Plaintiffs took these depositions because Appellants' objection on its face indicated an intent not to assist the district court in improving the result for the class, but to hijack the case to coerce a payment by preserving their ability to file a meritless appeal.

The "form" nature of Appellants' objection—which appears to be a cut-and-paste from another matter—was evident by the following facts:

(i)    The objection identified Morgan and De La Garza as "APPELLANTS" as opposed to objectors. Ex. 8 at 5:13-14.

(ii)   The objection took issue with the Settlement's "quick-pay" provision, arguing that counsel could be paid "as much as two years in advance" of the class. Ex. 8 at 3:25-4:1. The Settlement, however, *does not have* a quick-pay provision.

(iii)  The objection argued that fee multipliers are impermissible under law concerning federal fee-shifting statutes. The Actions, however, did not involve any federal fee-shifting statute. Ex. 8 at 4:16-18.

(iv)   The objection failed to cite to any evidence to support factual assertions, failed to acknowledge contrary evidence in the record, and cited cases that did not actually support the arguments. *See* Ex. 8.

This Court has summarily affirmed a class settlement in the face of similar canned objections filed by Bandas and other professional objectors that were unsupported by the record and Ninth Circuit law. *See* Ex. 10 (motion for summary affirmance in *In re Wal-Mart Wage & Hour Employment Practices Litig.*, Nos. 09-17648 *et al.* (9th Cir. May 10, 2010); Ex. 11 (order granting summary affirmance).

Here, the depositions of Morgan and De La Garza confirmed that their involvement in this case was driven by their serial-objector counsel. Neither objector could testify as to why the Settlement was objectionable. To the contrary, when asked, "[D]o you have any, at this point you yourself, do you have any objection to the terms of the settlement?," Morgan testified without equivocation, "No." Ex. 12 at 10:17-20. De La Garza stated that he believed the Settlement was objectionable solely because attorneys get paid a lot of money, but admitted that he knew nothing about the attorneys' fees in this case, had no other opinion of the Settlement, and could not articulate anything that he would change to make the Settlement better. Ex. 13 at 12:15-16:7. In other words, neither objector actually had any objection to the Settlement.

Nor did Morgan or De La Garza demonstrate any understanding of the objection that Bandas filed on their behalf. Other than the notice and the claim form he submitted, Morgan had never read anything relating to the Settlement. Ex. 12 at 9:13-10:9, 17:14-25, 18:21-24. He had not seen "his" objection until the

day of his deposition. *Id.* at 11:7-14, 17:13. Similarly, De La Garza knew nothing about the Settlement's terms, having also reviewed only the notice and the claim form he submitted. Ex. 13 at 12:7-14, 17:6-12. As they had done in other cases, Morgan and De La Garza simply received a notice of a settlement and "let Chris [Bandas] handle it." Ex. 12 at 8:11-22; 10:13-16; Ex. 13 at 8:3-16.

Additional testimony by Morgan and De La Garza demonstrated that they are on their way to becoming professional objectors like their counsel. Morgan testified that Bandas had previously ghostwritten an objection to a settlement that Morgan filed *pro se* in another case, for which a notice of appeal to the Ninth Circuit was filed on October 25, 2012. Ex. 12 at 13:5-8, 20:2-7; Ex. 17 at pp. 8-10. De La Garza similarly testified that Bandas had recently represented him in objecting to a settlement involving Nokia. Ex. 13 at 8:17-24. Just as with their objections here, neither Morgan nor De La Garza could articulate anything about the substance of their prior objections or the settlements in those cases. *Id.* at 9:9-11:25; Ex. 12 at 13:11-14:7. And De La Garza, again represented by Bandas, recently filed yet another objection to a settlement in *In re: LivingSocial Mktg. & Sales Practice Litig.*, MDL Dkt. No. 2254, No. 11-472 ESH (D.D.C. Feb. 8, 2013). Ex. 14 at pp. 39-46. De La Garza's objections in *LivingSocial* are similar to those advanced here. *Id.*

Following Appellants' depositions, on December 19, 2012 the district court held a fairness hearing. Neither the Appellants nor their counsel attended—even though the office of Appellants' Seattle counsel is just a few blocks from the U.S. Courthouse.

After reviewing all objections, including those of Appellants, the district court overruled the objections and concluded that the Settlement was fair, reasonable, and adequate. The next day, on December 20, 2012, the district court entered an order granting final approval to the Settlement. Ex. 1 (Order).

Appellants then filed a notice of appeal. Because the Settlement will not become effective until appellate review has concluded, none of the 80,000 class members who filed claims will receive payments/credits during the pendency of Appellants' appeal. *See* Ex. 2 at ¶ 2.03; Ex. 5 at ¶ 22. Nor will class counsel receive any payment for fees or expenses they incurred in the Actions. Thus, the very threat of his appeal, regardless of its merits, places Bandas in a powerful position to demand a "nuisance payment."

## LEGAL ANALYSIS

As the district court held, Appellants' objections to the Settlement are without merit. This appeal is merely an attempt to use the threat of delay in the distribution of the Settlement proceeds to extort money for themselves. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, n.30 (S.D. Fla. 2011)

- 8 -

(professional objectors' "sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto"). Summary affirmance is not only warranted but necessary to prevent Bandas and his clients from being in a position to hold up the Settlement and/or extort unearned money.

## I.     Summary Affirmance Is Appropriate in this Context

This Court may summarily dispose of an appeal at "any time prior to the completion of briefing" when "it is manifest that the questions on which the decision in the appeal depends are so insubstantial as not to justify further proceedings . . ." Ninth Circuit Rule 3-6.

"Where the outcome of a case is beyond dispute, a motion for summary disposition is of obvious benefit to all concerned." *United States v. Hooton*, 693 F.2d 857, 858 (9th Cir. 1982) (per curiam). This Court grants summary disposition when "the questions raised by this [appeal] are so insubstantial as not to require further argument." *Bonilla v. Holder*, 317 Fed. Appx. 710 (9th Cir. 2009).

Summary affirmance now, prior to merits briefing, is appropriate because Appellants' objection easily fits within the standard of "so insubstantial as not to require further argument." *See id*. And, the denial of their objection is the only ground on which Appellants can base this appeal. *See Devlin v. Scardelletti*, 536 U.S. 1, 9 (2002) (an objector "will only be allowed to appeal that aspect of the

District Court's order that affects him—the District Court's decision to disregard his objections.").

This Court's "review of the district court's fairness determination is extremely limited . . ." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (internal quotation marks omitted). This Court will reverse "only upon a strong showing that the district court's decision was a clear abuse of discretion." *Id.* (internal quotation marks omitted). "This is especially true in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998) (internal citations omitted).

Summary affirmance has been granted in the context of a district court's approval of a class action settlement, including by this Court against Appellants' counsel. *See, e.g.*, Ex. 10; *see also In re Chocolate Confectionary Antitrust Litig.*, 470 Fed. Appx. 67, 70 (3d Cir. 2012) ("We . . . cannot find that the District Court abused its discretion in approving the IEU Settlement Agreement," granting summary affirmance).

This Court has also regularly granted summary affirmance in appeals of preliminary injunction motions where, like here, the "sole inquiry is whether the district court abused its discretion . . ." *See, e.g.*, *Horn v. Carter*, 209 Fed. Appx. 672 (9th Cir. 2006).

## II.    Appellants' Objections Lack Merit

Although legitimate objectors play a valuable role in class action litigation, Appellants' objections provide no such benefit here.  Rather, their baseless objection, the eminently fair terms of the Settlement itself, and the limited nature of this Court's review of the district court's approval warrant summary affirmance.

The depositions of Gordon and De La Garza further demonstrate that Appellants actually have *no* substantive objections to the Settlement, but instead allowed themselves to be used by Bandas as an excuse for filing a boilerplate objection, the aim of which was to hold the Settlement hostage for their own personal gain and to the detriment of the class.

### A.    The Settlement Does Not Include a "Quick Pay" Provision

Appellants' objection about a "quick pay provision" appears recycled from some previous court filing as there is no quick-pay provision in the Settlement. Ex. 8 at 3:24-4:2.  Appellants argued, in their objection, that Class Counsel could get paid "as much as two years in advance."  *Id*.  In fact, no class members or counsel will receive payments until after all appeals are resolved.  *See* Ex. 2 at ¶¶ 1.02, 2.01, 1.05, 2.03 (Clearwire shall fund the Settlement after "Final Approval," which is defined as occurring 31 days after judgment if there is no appeal and otherwise at the end of appellate review).  That Appellants made this argument shows that their counsel barely read the Settlement before objecting.

### B. Class Counsel's Fee Request Is Reasonable

Appellants also objected to the amount of Class Counsel's fee request, which consists of the amount remaining from a maximum of $2 million after deduction of service awards and reimbursement of expenses. *See id*. at ¶¶ 2.03, 4.02. The district court has not ruled on Class Counsel's fee motion, instead continuing the motion until the claims data is finalized. Thus, an appeal of a fee award is not yet ripe. Significantly, any portion of the $2 million that the district court does not award for fees, expenses, or service awards will be used to increase the amount paid to each eligible class member on a pro rata basis. *See* Ex. 3.

No matter how reasonable a fee request is, an objector can always argue that it should be lower. But even if the district court awards the full amount of the fee request, it would not be even close to an abuse of discretion. Class counsel spent years working on the Actions, obtained significant monetary and non-monetary relief for the class, and will receive an amount of fees *less* than their lodestar. When measured against counsel's efforts through early November 2012 only (the cut-off used in the initial fee motion), the fee request would have resulted in a multiplier of 1.035—mere hundredths above 1.0. *See* Ex. 15 at ¶¶ 93-95, 99, 122.

Counsel then devoted additional time and expenses on final approval briefing, dealing with Appellants' objection, and now this appeal. This time includes moving the district court for leave to take depositions of Morgan and De

La Garza, Ex. 9 (order); taking the depositions, Exs. 12-13; submitting information derived from the depositions to the district court prior to the fairness hearing, Ex. 1 at pp. 20-24; moving the district court for an appeal bond, Ex. 14; and now moving for summary affirmance. At this point, class counsel's multiplier is fractional or "negative," meaning that they are requesting a fee less than their ordinary billings for this contingent-fee case. *See* Ex. 15 at ¶¶ 124-125.

In addition, the $2 million cap was a "mediator's proposal" made by Judge Infante, who is not known as a purveyor of unfair or collusive settlements. Ex. 7 at ¶ 5; *see also* Ex. 15 at ¶¶ 29-33. That the Settlement was a result of a two-day mediation and months of subsequent hard-fought arm's-length negotiations with no evidence of collusion entitles the Settlement to a degree of deference: The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . ." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Under the lodestar approach, which can be most appropriate when a settlement results in significant injunctive relief, as this one does, class counsel's fee request is reasonable. And under the percentage approach, which can be difficult to apply when a settlement results in benefits other than a common fund, class counsel's fee request is within accepted norms. The amount of the fee request, as a percentage of only the most easily quantifiable amounts made

*available* under the Settlement, is significantly less than the Ninth Circuit's 25%

benchmark for common-benefit awards.[3] *See* Ex. 15 at ¶¶ 50, 131.

Although Appellants hypothesized that the Settlement "is likely to produce a

benefit to only 1% of the class," Ex. 8 at 2:6-10, they offered no support for this

hypothesis, which was readily shown to be inaccurate by the claims data available

and in the record at that time. This claims data showed that even with the deadline

for submitting claims still months away, the claims rate was 2½ times what the

objectors hypothesized and growing. Ex. 5 at ¶ 22; Ex. 7 at ¶¶ 9, 10.

Appellants' misinformed hypothesis also did not take account for the fact

that many class members will receive a direct financial benefit without submitting

a claim. If current subscribers have fixed-term contracts they wish to terminate in

the future for reasons of speed or quality, Clearwire will waive ETFs for at least

two years following February 27, 2012, which could result in up to $1.4 million of

avoided ETFs. Ex. 2 at ¶¶ 5.02-03; Ex. 7 at ¶ 12.

---

[3]     When cross-checking a fee request against the 25% benchmark, it is the
amount or value *made available* to the class, not the amount actually *claimed*, that
is relevant to the analysis. *Williams v. MGM-Pathe Communications Co.*, 129 F.3d
1026, 1027 (9th Cir. 1997) (footnote omitted) ("We conclude that the district court
abused its discretion by basing the fee on the class members' claims against the
fund rather than on a percentage of the entire fund or on the lodestar."); *Hartless v.
Clorox Co.*, 273 F.R.D. 630, 643 n.3 (S.D. Cal. 2011), *aff'd in part*, 473 F. Appx.
716 (9th Cir. 2012) ("Under Ninth Circuit law, it is an abuse of discretion to base
the percentage recovery on the amount of claimed funds rather than the entire
settlement fund.").

In their objection, Morgan and De La Garza attempted to liken this case to *In re Bluetooth Headset Prod's Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). *See* Ex. 8 at 3:7. In *Bluetooth*, the settlement agreement at issue provided the class with "$100,000 in *cy pres* awards and zero dollars for economic injury, while setting aside up to $800,000 for class counsel." *Id.* at 938. This Court determined that this "disparity between the value of the class recovery and class counsel's compensation raises at least an inference of unfairness." *Id.* By contrast, the Settlement at issue here provides the class with access to a substantial sum available through a streamlined claim procedure, plus a substantial sum of waived ETFs available without a claim procedure, making Appellants' comparison to *Bluetooth* inapt. *See* Ex. 15 at ¶¶ 50, 131; Ex. 7 at ¶ 12. Moreover, Appellants ignore the significant non-financial benefits that the Settlement provides in the form of enhanced contractual disclosures and advertising policy changes by Clearwire. *See* Ex. 2 at ¶ 5.01.

### C.  Paying Fees with One Check Is Not "Illegal"

Appellants, in their objection, also argued that it is "illegal" for a settlement to provide that the amount awarded as attorneys' fees will be paid by a single check to one law firm for further distribution. *See* Ex. 8 at 4:3-7. Appellants cited only a single case from the Fifth Circuit, *In re High Sulfur Content Gasoline*

*Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008), which does not support their argument.

That a fee award will be paid by a single check cannot be a legitimate basis to reverse final approval of a class settlement, and the Fifth Circuit certainly did not reverse on this basis in *High Sulfur*.[4] To the contrary, in this Circuit, fee awards are routinely paid by a single check, with allocations made thereafter without the need for court action. *See, e.g., In re Bank of Amer. Credit Protection Marketing & Sales Practices Litig.*, No. 11-2269, 2013 WL 174056, *2 (N.D. Cal. Jan. 16, 2013) ("The awarded fees and expenses shall be disbursed to Lead Class Counsel for distribution among Plaintiffs' Counsel."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2013 WL 149692, *3 (N.D. Cal. Jan. 14, 2013) ("The attorneys' fees and expenses shall be allocated amongst Plaintiffs' Counsel by Co-Lead Class Counsel . . . in a manner which, in Co-Lead Class Counsel's good-faith judgment, accurately reflects each of such Plaintiff's Counsel's contributions to the establishment, prosecution, and resolution of this litigation"); *Arthur v. Sallie Mae,*

---

[4]    *High Sulfur* is easily distinguished as it involved a dispute among counsel where the district court divided a lump sum attorneys' fee award according to Lead Counsel's proposed allocation at an ex parte hearing without the benefit of supporting data. *High Sulfer*, 517 F.3d at 223.  The district court then sealed the individual awards (without a justifying privacy interest), prevented all counsel from communicating with anyone about the rewards, required counsel to sign releases upon the acceptance of payments, and improperly limited its own scope of review.  *Id.* at 223-24, 229-30.  Here, there is no fee allocation dispute among counsel.  Ex. 15 at ¶ 88; *see also* Ex. 16.

*Inc.*, No. 10-198, 2012 WL 4076119, at *3 (W.D. Wash. Sep. 17, 2012) ("The Court authorizes the Class Counsel firm of Lieff Cabraser . . . to allocate the fee award among the Plaintiffs' firms."); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011) ("[F]ederal courts routinely affirm the appropriateness of a single fee award to be allocated among counsel and have recognized that lead counsel are better suited than a trial court to decide the relative contributions of each firm and attorney.").

### D. Multipliers Are Permissible

Finally, Appellants contended in their objection that fee multipliers are impermissible. This objection missed the mark on multiple levels.

First, as discussed above, if the district court grants class counsel's full fee request, there will be no multiplier—which renders Appellants' legal position wholly irrelevant even if right.

Second, Appellants relied on authority involving federal fee-shifting statutes, Ex. 8 at 4:16-18, but Plaintiffs brought no claims under federal fee-shifting statutes.

Third, the state statutes and common-law principles that Plaintiffs sued under here *do* permit multipliers. *See, e.g.*, *Clausen v. Icicle Seafoods, Inc.*, 272 P.3d 827, 833 (Wash. 2012) (en banc) ("Once the lodestar has been calculated, the court may adjust the fee to reflect factors not considered yet. The two categories

- 17 -

for adjustment are based on whether the fee was contingent on the outcome and the quality of work performed.").

### E. Appellants' Motives Are Suspect

As demonstrated, Appellants' objection relied on factual inaccuracies and misstatements of law. It is easily dismissed as without merit. The nonchalance evidenced by Appellants' careless "form" filing and their deposition testimony further suggests a motive not to seek a better settlement for the Class, but to hold the settlement hostage in an attempt to extort self-interested payments.

The Federal Judicial Center advises courts to "[w]atch out . . . for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests." Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* 17 (Fed. Jud. Ctr., 3rd ed. 2010), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/classgd3.pdf/$file/classgd3.pdf.

Appellants are exactly the type of professional objectors that the Federal Judicial Center warns about. A number of cases in which Bandas has objected are identified in Exhibit 17. This exhibit highlights that numerous courts have rejected Bandas's objections and criticized the tactics at issue. As just one example,

> [T]he Court finds that the objections are not supported by law or the facts and are indeed meritless. . . . Objectors' counsel have a documented history of filing notices of appeal from orders approving

other class action settlements, and thereafter dismissing said appeals
when they and their clients were compensated by the settling class or
counsel for the settling class.

*In re Wal-Mart Wage & Hour Employment Practices Litig.*, No. 06-225, 2010 WL
786513, at *1 (D. Nev. Mar. 8, 2010).

Bandas has been reprimanded or sanctioned by many of these courts for
improper conduct related to his objections and appeals. The Ninth Circuit, for
example, has previously dismissed appeals filed by Bandas for failure to file an
opening brief and failure to file appellate fees. *See, e.g.*, *Embry v. ACER America
Corp.*, No. 09-1808, 2012 WL 3777163, at *1 (N.D. Cal. Aug. 29, 2012) ("On
April 18, 2012, the Ninth Circuit dismissed the appeal for failure to pay the appeal
fees"); Ex. 17 at pp. 11-13 (*Chavez v. Blue Sky Natural Beverage Co.*, No. 12-
16520, slip op. (9th Cir. Dec. 11, 2012) ("this appeal is dismissed for failure to file
the opening brief")). The Northern District of California likewise found Bandas in
civil contempt for failing to file an appellate bond. *Embry*, 2012 WL 3777163, at
*2. And a state court, in a detailed analysis, expressed concern

that attorney Bandas is seeking to wrongfully use the class action
settlement and objection process for personal gain, and without any
corresponding benefit to any individual objector or the settlement
class as a whole.

Ex. 17 at p. 25 ¶ 27 (*Mussmann v. Wal-Mart Stores, Inc.*, No. LACV-27486, slip op. (Dist. Ct., Clinton Cty., Iowa Oct. 13, 2009)).  The court took judicial notice that Bandas had previously

> been found by a Florida court ... to be engaging in a conspiracy with his clients and co-counsel to extort money from class members and class counsel, through a similar practice of objecting to the proposed settlement.

Ex. 17 at pp. 19-20.

Appellants' baseless objection, their deposition testimony, and their counsel's history of objections confirm that this appeal is part of a pattern of wrongful attempts to leverage delay into unwarranted paydays.

## CONCLUSION

For the reasons stated herein, the Court should grant summary affirmance.

Dated: February 26, 2013          Respectfully Submitted,

                                 *s/ Cliff Cantor*
                                 One of Counsel for Plaintiffs-Appellants

Other Class Counsel:

LAW OFFICES OF                    TYCKO & ZAVAREEI LLP
  CLIFFORD A. CANTOR, P.C.        Jonathan K. Tycko
Cliff Cantor, WSBA #17893         2000 L St., N.W. Ste. 808
627 208th Ave. SE                 Washington, D.C. 20036
Sammamish, WA 98074               Tel: (202) 973-0900
Tel: (425) 868-7813               Fax: (202) 973-0950
Fax: (425) 732-3752               jtycko@tzlegal.com
cliff.cantor@comcast.net

MILBERG LLP
Lori G. Feldman
One Penn Plaza
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229
lfeldman@milberg.com

Counsel for plaintiffs[5] in *Dennings*

PETERSON WAMPOLD
  ROSATO LUNA KNOPP
Felix Gavi Luna
1501 Fourth Ave., Ste. 2800
Seattle, WA 98101
Tel: (206) 624-6800
Fax: (206) 682-1415
luna@pypfirm.com

Counsel for plaintiffs in *Minnick*

AUDET & PARTNERS, LLP
Michael McShane
221 Main St., Ste. 1460
San Francisco, CA 94105
Tel: (415) 568-2555
Fax: (415) 568.2556
mmcshane@audetlaw.com

Counsel for plaintiffs in *Newton*

---

[5]     In this context, "plaintiffs" does not include Mr. Robert Prior, who is *pro se*.

## **Certificate of Service**

I certify that, on February 26, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit via the CM/ECF system. Participants in the case who are registered users will be served by the appellate CM/ECF system.

For the following participant, which is not known to be a registered CM/ECF user, I certify that, on February 26, 2013, I mailed the foregoing by first class mail, postage prepaid:

> Mr. Robert Prior
> 2016 E. 6th St.
> Vancouver WA 98661

*s/ Cliff Cantor*, WSBA # 17893